Melvin McGUFF, Petitioner-Appellant,

v.

STATE OF ALABAMA, and James Digman, etc., Respondents-Appellees.

No. 77–2154
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.* 5 Cir., 1970, 431 F.2d 409, Part I.

George B. Azar (Court-appointed), Montgomery, Ala., for petitioner-appellant.

William J. Baxley, Atty. Gen., Rosa G. Hamlett, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before BROWN, Chief Judge, RONEY and HILL, Circuit Judges.

BROWN, Chief Judge:

An Alabama jury convicted Melvin McGuff of murder and the Alabama Court of Criminal Appeals affirmed the conviction. *McGuff v. State*, Ala.Crim.App.1972, 49 Ala.App. 88, 268 So.2d 868, *cert. denied*, 268 So.2d 877. After exhausting state remedies, McGuff sought habeas relief in Federal District Court pursuant to 28 U.S.C. § 2254. On April 11, 1977, after holding an evidentiary hearing, the District Judge entered an order denying relief. On appeal, McGuff primarily contends that (i) the pre-trial identification procedure used by the police was so suggestive as to violate due process, and (ii) his Sixth Amendment right to counsel as incorporated under the Fourteenth Amendment due process clause was violated. We affirm the District Court's denial of relief.

On Sunday afternoon, April 27, 1969, Thomas Lee Berry was walking along a rural Alabama road with Junior Hollingsworth and Rovena Hollingsworth. A car approached from the opposite direction, passed the three walkers, and stopped at the side of the road. Five men, including Thomas Berry's brother, were in the car. Immediately behind the first car came a dark blue Ford. The man in the right front of the Ford yelled an obscenity at the walkers as the Ford slowed to walking speed. Thomas Berry walked over to the Ford and was shot at close range with a pistol. The Ford was then driven away.

Early Monday morning, April 28, the police arrested McGuff, placed him in an automobile, and drove him from place to place to have various witnesses identify him. At times the assistant district attorney held conversations out of McGuff's presence with persons who then came and viewed the suspect in the rear seat of the car. Upon arrival at the station house later that day, McGuff was placed by himself in a cell. The next day McGuff was viewed in his cell by a number of persons for the sole purpose of making identification. These confrontations occurred several weeks before either the indictment of McGuff or his bail bond hearing.

*The Showup Confrontations*

The Supreme Court established the due process standard against which police identification procedures are to be measured in *Stovall v. Denno*, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. A violation of due process occurs when, under the totality of the circumstances, a confrontation procedure is "so unnecessarily suggestive and conducive to irreparable mistaken identification." 388 U.S. at 302, 87 S.Ct. at 1972. Within this Circuit the due

process standard has developed into a bipartite inquiry. *United States v. Smith*, 5 Cir., 1977, 546 F.2d 1275; *Bloodworth v. Hopper*, 5 Cir., 1976, 539 F.2d 1382; *United States v. Gidley*, 5 Cir., 1976, 527 F.2d 1345. First, as a threshold inquiry, the Court must decide whether the identification procedure was unnecessarily suggestive. A finding of impermissible suggestiveness raises concern over the reliability of identification and triggers closer scrutiny by the Court to determine whether such procedure created a substantial risk of misidentification. As *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, makes clear, however, the linchpin of due process analysis is the identification's reliability.

We conclude in the present case that although the showup procedures were unnecessary and suggestive, the exceeding reliability of the identification outweighs the corrupting effect of the suggestive procedures. We cannot, however, overemphasize our dislike for such unnecessary and repetitive police conduct. Only the great reliability of these identifications saves the procedures utilized from constitutional infirmity.

The factors considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 97 S.Ct. at 2253. In this case only the Hollingsworths made positive in-court identifications of McGuff as the murderer. The men in the other car apparently did not have a clear view of the assailant. The Hollingsworths viewed the murderer from a distance of about 10 feet during the middle of the afternoon. They testified that they had an unobstructed view of McGuff at the time in question. McGuff's rude and unprovoked conduct assured that he would have the Hollingsworths undivided attention and the witnesses so testified. The

Hollingsworths also adamantly testified as to the certainty of their identification. Finally, the identification confrontations all occurred within a relatively short time after the shooting. Consequently, the likelihood of misidentification is slight.

### Right To Counsel

The Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated." *Kirby v. Illinois*, 1972, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411; *Cannon v. Alabama*, 5 Cir., 1977, 558 F.2d 1211, 1217; *Brown v. United States*, 5 Cir., 1977, 551 F.2d 619, 620. It is clear from the record that adversary judicial proceedings had not yet begun against McGuff at the time of the confrontations. A preliminary hearing was not held until May 22, 1969, and McGuff was not indicted until August 28, 1969. Accordingly, the absence of counsel at the showups did not infringe McGuff's Sixth Amendment right to counsel.

Other issues, such as the state's failure to advise McGuff of his right to counsel at the time of arrest and the police's holding of McGuff incommunicado for a period of time after the arrest, are not seriously pressed on appeal. The District Court's order adequately discussed and disposed of these and other issues. Having considered McGuff's primary contentions on appeal, we find that the District Court was justified in denying habeas relief.

AFFIRMED.