**James FRISCO, Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, et al., Respondents-Appellees.**

No. 84–3448.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1986.

As Amended March 21, 1986.

James Frisco, pro se.

Richard C. Stanley (Court-appointed) and David W. Gruning, New Orleans, La., for petitioner-appellant.

Wm. H. Campbell, Joanne C. Marier and Pamela S. Moran, Asst. Dist. Attys., New Orleans, La., for respondents-appellees.

Before GEE and JOHNSON, Circuit Judges, and PARKER *, District Judge.

ROBERT M. PARKER, District Judge:

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This appeal is taken from the federal district court's denial of James Frisco's application for habeas corpus relief.  For the purposes of this action, the following facts are relevant:

The robbery for which Frisco was convicted occurred January 26, 1981; it was witnessed by one person—Andrew Washington, a driver for the Purolator Armored Car Company, who is also the only victim. Washington was returning to his armored car with two bags of cash and checks from a bank in a shopping center in eastern New Orleans.  As he approached the shopping center exit, a man appeared from behind a wall, shoved a gun in his ribs and said, "Give it up."  The assailant snatched the bag from Washington, shoved him down and fired the pistol at Washington.  The bullet struck Washington in the left ear lobe.  Washington did not furnish the police with a description of his assailant immediately after the crime.  Seven days later, police officers confronted Washington with an array of six of seven photographs that included a picture of Frisco.  After nearly fifteen minutes of deliberation, Washington picked out Frisco's picture but expressed doubt regarding the identification and stated that he could not make a positive identification without a physical lineup.  [Prel.Ex.Trans. p. 3]  The doubt Washington expressed related to his inability to remember whether Frisco had a beard or a mustache or either.  A day later, Frisco was arrested for the crime and was appointed counsel prior to a preliminary examination.  Some twenty-four days later, Frisco was ordered to appear in a physical lineup.  Frisco did not have his attorney present, despite his specific request that his Counsel accompany him.  Washington identified Frisco and Frisco was brought for trial.

At trial, Washington supplied the heart of the prosecution's case against Frisco. The prosecution presented to the jury, no less than five times, the fact that Frisco was identified at the uncounseled lineup by Washington.  In its case in chief, the prosecution elicited testimony from Washington about the lineup identification immediately before Washington was asked to make his in-court identification.  Frisco was convicted and sentenced to fifty years hard labor.

* District Judge of the Eastern District of Texas  sitting by designation.

Frisco appealed his conviction to the Louisiana Supreme Court challenging the trial court's denial of his Motion to Suppress the lineup identification and the repeated reference to the lineup identification at trial. The Louisiana Supreme Court upheld the conviction, concluding that the constitutional error in admitting the trial evidence of the uncounseled pre-trial identification of Frisco did not contribute to his conviction for armed robbery and, therefore, constituted harmless error. *State v. Frisco*, 411 So.2nd 37 (La.1982). The federal district court for the eastern district of Louisiana denied Frisco's application for habeas corpus relief rejecting its claim that he was denied due process of law when evidence of the uncounseled pre-trial lineup identification was introduced at trial. We vacate.

## II. THE PROPRIETY OF THE LINEUP

Relying on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 1178 (1967), Frisco contends that the pre-trial lineup identification held in the absence of his appointed counsel violated his Sixth Amendment rights and also made Washington incompetent for subsequent in-court identification. Before addressing the admissibility of the identifications, we must first determine whether Frisco had any right to counsel at the pre-trial lineup. The starting and ending point in this determination begins with the state's remarkable and obscure claim that Frisco was not entitled to counsel at the lineup because the state had not really decided to prosecute Frisco. This untenable position is contrary to well-established constitutional principles.

■ An accused enjoys the right to presence of counsel at a lineup conducted after adversarial judicial proceedings are initiated. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 877, 32 L.Ed.2d 411 (1972). In this circuit, a preliminary hearing marks the initiation of the adversarial process. *Daigre v. Maggio*, 705 F.2d 786 (5th Cir. 1983). Here, the lineup took place after

the preliminary hearing and without the presence of counsel even though unrebutted testimony in the record shows that Frisco specifically requested that his counsel be present. In fact, in this very case, the Louisiana Supreme Court has already held Frisco's right to counsel applied to the lineup. *State v. Frisco*, 411 So.2d 37, 39 (La.1982).

■ Under such circumstances, there can be no question that Frisco's right to counsel under the Sixth Amendment had attached making the lineup unconstitutional.

## III. THE LEGAL CONSEQUENCE OF THE UNCONSTITUTIONAL LINEUP

Having found the right violated, we look to *Wade* and *Gilbert* to determine the admissibility of Washington's testimony. The state may not adduce any evidence of an unconstitutional pre-trial lineup identification. *Gilbert*, 388 U.S. at 277, 87 S.Ct. at 1963. The state may, however, present an in-court identification by a witness previously subjected to such an uncounseled lineup so long as the state demonstrates "by clear and convincing evidence that the in-court identification is based upon observations of the suspect independent from the lineup identification. *Wade*, 388 U.S. at 240, 87 S.Ct. at 1939. In the present case, the state prosecutor introduced at trial both the identification made at the lineup and the identification made in court. The legal consequence of each is treated differently and will, therefore, be discussed separately.

### 1. *The Uncounseled Lineup Identification*

#### A. Gilbert *Mandates a New Trial*

Frisco contends that testimony that Washington had made a pre-trial lineup identification of the accused was erroneously placed before the jury as part of the prosecution's case and thus cannot be considered harmless error and could not be cured by instructions to the jury. We agree. Under the mandate of *Gilbert*,

"[t]he state is not entitled to an opportunity to show that the testimony had an independent source." *Id.,* 388 U.S. at 273, 87 S.Ct. at 1957. Rather, the accused is entitled to a new trial unless the state carries its burden of showing that the constitutional error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

■ To determine whether a new trial is required, the question becomes whether there is a "reasonable possibility" that the error "might have contributed to the conviction." *Chapman* at 23, 87 S.Ct. at 827. If so, a new trial is mandated. In order to determine if the constitutional error in this case is of such magnitude as to require automatic reversal of the conviction, an examination must be made of the record below.

## B. *The Harmless Error Inquiry*

■ The record reveals that the lineup served a pivotal role in the state's case against Frisco. The state introduced the unconstitutional lineup identification no less than five times in Frisco's trial. In fact, Washington's lineup served as the unifying theme of the state's opening statement. The number of references to the lineup, the thoughtful placement of those references, and the use of the tainted evidence to bolster Washington's in-court identification taken together preclude a finding that this error did not contribute to Frisco's conviction. Moreover, scrutiny of the evidence linking Frisco to the robbery shows that the state cannot possibly establish that the error was harmless beyond a reasonable doubt. Considerable doubt is cast upon Washington's ability to make a reliable identification of his attacker. The facts show the following: 1) Washington could not positively identify a picture of his alleged attacker seven days after the crime and after nearly fifteen minutes of deliberation; 2) Washington could not at first remember whether his attacker had a beard or a mustache; and finally, 3) Washington could not describe the attacker's gun to the police.

The brief exposure to his attacker in a life-threatening situation, combined with an evolving memory and an inability to positively identify the attacker in a photo array taken together could cast substantial doubt in the mind of a reasonable juror as to whether Frisco was the perpetuator or merely a suspect of convenience. Since the lineup identification of Frisco was the only direct evidence of his guilt, any error in its admission could not be deemed harmless beyond a reasonable doubt. This error alone requires reversal of his conviction. *Chapman,* supra, *Cf. United States v. Thomas,* 536 F.2d 1253, 1257 (8th Cir.1976).

Nor do we find it reassuring that the state claims no impropriety occurred in the lineup procedures. Such a contention ignores the lesson of *Wade* and *Gilbert.* Fairness at the lineup does not render this error harmless:

> The period from arraignment to trial is "perhaps the most critical period of the proceedings ..." at which the accused "requires the guiding hand of counsel ..." if the guarantee is not to prove an empty right.

*Wade,* 388 U.S. at 225, 87 S.Ct. at 1931 *quoting Powell v. Alabama,* 287 U.S. 45, 57 & 69, 53 S.Ct. 55, 59 & 64, 77 L.Ed. 158 (1969). Defense counsel's presence at this lineup or any lineup equips him to attack not only the lineup identification but the courtroom identification as well. *Wade,* 388 U.S. at 241, 87 S.Ct. at 1939. "Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to presence of his counsel at the critical lineup." *Gilbert,* 388 U.S. at 273, 87 S.Ct. at 1957.

## 2. *The In-court Identification*

### A. *The Necessity of a* Wade *Hearing*

■ The admission of the in-court identification without first determining that it was not tainted by the illegal lineup but was of an independent origin was constitu-

tional error. *See Wade* and *Gilbert,* supra. On remand, the burden is on the prosecution "to establish by clear and convincing evidence" that Washington's in-court identification rested on his independent observation of the suspect rather than upon the illegal lineup. *Wade,* 388 U.S. at 240, 87 S.Ct. at 1939. On Frisco's motion, the trial court shall conduct an evidentiary hearing concerning Washington's ability to identify the defendant. Such hearing shall be conducted outside the presence of the jury. The trial court shall determine whether Washington's in-court identification is free of taint and possesses an independent source or is fruit of the illegal lineup. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, *Wade,* supra.

In making this determination, the trial court shall consider: 1) The prior opportunity the witness had to observe the alleged criminal act; 2) The existence of any discrepancy between any pre-lineup description and the defendant's actual description; 3) Any identification prior to the lineup of another person; 4) Any identification by picture of the defendant prior to the lineup; 5) Failure to identify the defendant on a prior occasion; 6) Any time lapse between the alleged act and the lineup identification; and 7) Any other factors raised by the totality of the circumstances that bear upon the likelihood that the witness's in-court identification is not tainted by the illegal lineup and does, *in fact,* have an independent source. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup. *Wade,* 388 U.S. at 241, 87 S.Ct. at 1939.

Accordingly, a finding by the trial court that the in-court identification was based in whole and in part upon the unconstitutional lineup will necessitate that the trial judge prohibit Washington from identifying Frisco at his new trial. *United States v. Thomas,* 536 F.2d at 1254.

*Wade* and *Gilbert* fashioned these exclusionary rules to deter law enforcement authorities from holding lineup identifications in the absence of counsel. Two vital functions are served by strict compliance with the Supreme Court's directives. First, the rules serve to deter the use of evidence of an unconstitutional lineup identification at trial. And secondly, the rules serve to insure that an unconstitutional lineup identification is not improperly used to bolster a shaky in-court identification.

This conviction violates the spirit and essence of *Wade* and *Gilbert;* therefore, the judgment of the district court is vacated and the case is remanded with instructions to enter a new judgment granting the writ and discharging the prisoner unless the state shall commence a retrial of him within a reasonable time, not exceeding ninety days from the entry of judgment.

VACATED AND REMANDED.