Lucio G. RIVERA, Petitioner–Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.

No. 90–8410
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 28, 1991.

Rehearing Denied Aug. 5, 1991.

Lucio G. Rivera, pro se.

S. Michael Bozarth and Jim Mattox, Attys. Gen., Austin, Tex., for respondent-appellee.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

Lucio G. Rivera, proceeding pro se and in forma pauperis, appeals the denial of his petition for habeas corpus. We find no reversible errors and affirm.

## I.

Petitioner Lucio G. Rivera, an inmate of the Texas Department of Corrections, is currently serving a forty year sentence for intentional murder. He killed Leslie Massengill in March of 1978 while on spring break from his first year in law school. Rivera was originally found incompetent to stand trial and placed in a state hospital; after a five to six month stay in the hospital, he was returned to a Texas district court for trial.

At the trial, Rivera raised an insanity defense. His wife and several of his classmates testified that he had been involved in a car accident a few months before the crime and had acted in a bizarre manner since the accident. A nurse from the county jail testified about Rivera's bizarre behavior after the arrest, and a doctor from the same jail testified that he believed Rivera was a paranoid schizophrenic, unable to form the requisite intent, at the time of the crime. A nurse and doctor from the state hospital concurred with the doctor from the county jail; and finally, a second doctor from the state hospital testified that Rivera was possibly insane at the time of the crime. The state countered with two doctors who testified that Rivera was faking mental illness; the jury apparently agreed.

After exhausting his state remedies, Rivera filed this habeas action in the district court below. The state filed a motion to dismiss, and the district court granted the motion to dismiss without a hearing. Rivera now appeals to this court, arguing both that his trial counsel was ineffective and that his rights of silence and counsel were violated by two psychiatric examinations.

## II.

Rivera sets forth several grounds for his ineffective assistance of counsel claim. In order to prevail on the claim, he must show both that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test of prejudice is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Rivera first argues that his attorney, Gary Cohen, failed to sufficiently investigate the facts surrounding his arrest. He suggests that brutality by the police successfully elicited several statements that led police to the murder weapon. The district court dismissed the argument both because Rivera had not produced any evidence of unwarranted force and because the allegations of police brutality had no bearing on his guilt or innocence. We agree with the district court. Cohen objected at trial to the state's attempt to introduce Rivera's statements about the murder weapon; and, while the state introduced the weapon, it did not substantially rely on the weapon in connecting Rivera to the crime. Rivera has alleged no other

relevant facts that a more thorough investigation might have uncovered.

■■■ The next two grounds are related. Rivera contends that Cohen failed to timely mail subpoenas to two expert psychiatric witnesses, Drs. Tanay and Srinivasan, who would have testified favorably on his insanity defense, and failed to move for a continuance in order to allow them to testify. He has produced a good deal of documentation in support of these contentions. A number of letters and memos from Dr. Tanay evidence that, although he had been in contact with Cohen since May of 1979, he "was not notified that my presence in the courtroom was desired, until it was too late for me possibly to do so." Cohen did not contact Dr. Tanay's office until July 2, 1979. Dr. Tanay was then on vacation, and his secretary unable to reach him. Cohen did not reach Dr. Tanay himself until July 10, the day before he was needed at trial. Dr. Tanay agreed to call Cohen the next day to see if he had secured a continuance, but Cohen never even drafted a motion for continuance. Dr. Tanay would have discredited and contradicted Dr. Grigson, the state's leading psychiatric expert; in one of the letters, Dr. Tanay described Dr. Grigson's report as "the most inadequate report he had encountered in nearly twenty-five years of practice" and noted that the American Psychiatric Association had criticized Dr. Grigson in an amicus curiae brief.

Rivera has also produced a letter from Dr. Srinivasan stating that he was subpoenaed but became ill with the flu on the day of the trial. Dr. Srinivasan treated Rivera at the state hospital; his testimony would have contradicted the testimony of Dr. Hunter, who treated Rivera at the same hospital and testified for the state.

The district court rejected the arguments because Rivera had not produced evidence that Dr. Tanay would have appeared if subpoenaed earlier, or that his testimony would have changed the outcome of the trial, and because even an earlier subpoena could not have secured the testimony of Dr. Srinivasan since he was ill on the day of trial. The district court also believed that both witnesses would have presented only cumulative testimony.

We agree with the district court that Cohen's failure to mail the subpoenas earlier was harmless because Dr. Tanay was on vacation and Dr. Srinivasan was ill at the time of the trial. His failure to request a continuance gives us some pause, as both would have aided Rivera in his insanity defense. But because Rivera was able to present the testimony of three other psychiatric doctors and two nurses, we agree with the district court that Cohen's failure to also secure the testimony of Drs. Tanay and Srinivasan was not sufficiently prejudicial to warrant vacating his conviction. Both of the cases cited by Rivera, *Davis v. Alabama*, 596 F.2d 1214, 1218 (5th Cir. 1979), and *United States v. Fessel*, 531 F.2d 1275, 1279 (5th Cir.1976), involved much more egregious circumstances.

■■■ Rivera next argues that his attorney failed to call his family members to the stand to testify about his erratic and bizarre behavior at the time of the crime. He has produced an affidavit from his brother and uncle evidencing their willingness to testify on his behalf. The district attorney picked up on this omission at trial, pointing out to the jury that "the best witnesses about bizarre behavior would have been those most closely related to him in time in connection with this offense." In support of this argument, Rivera again cites *Davis*, 596 F.2d at 1217. The district court stated that this issue involved a matter of trial tactics, not a proper subject for habeas review. The district court pointed out that Cohen had called Rivera's classmates to testify to Rivera's bizarre behavior instead of his family because they would appear less biased. Although we agree with Rivera that testimony from his family might have aided somewhat in his defense, we do not think that Cohen's decision was so deficient or so prejudicial that it amounted to ineffective counsel. *Davis* is not contrary because, in that case, the defendant's attorney called neither his family *nor* his friends to testify to his mental incompetence.

Finally, Rivera argues that his attorney failed to object to a comment by the district attorney on his failure to testify at the trial, citing *Milton v. Procunier*, 744 F.2d 1091, 1095 (5th Cir.1984), and *United States v. Garcia*, 655 F.2d 59 (5th Cir. 1981). Like the district court, we have reviewed the record and have failed to find any improper comments. Rivera points to a statement by the district attorney challenging the *"counsel* for the defense" to "come up here and tell this jury that Lucio Rivera did not kill Leslie Massengill." But this is not the type of comment that implicates constitutional concerns; we cannot agree that it "was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Milton*, 744 F.2d at 1095, *citing United States v. Jennings*, 527 F.2d 862, 871 (5th Cir.1986). A statement by a district attorney is not "manifestly intended to comment on the defendant's silence" when there is another plausible explanation. *United States v. Martinez*, 894 F.2d 1445, 1451 (5th Cir.), *cert. denied*, ––– U.S. –––, 111 S.Ct. 351, 112 L.Ed.2d 315 (1990).

### III.

In addition to the ineffective assistance of counsel claim, Rivera argues that two court-appointed psychiatrists, Drs. Holbrook and Grigson, violated his Fifth Amendment right of silence and Sixth Amendment right to assistance of counsel by failing to inform him that they would communicate his discussions with them to the district attorney and the court and by failing to notify his attorney of the examinations. He relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), where the Supreme Court held that the admission of information obtained in a court-ordered competency examination as affirmative evidence against Smith violated his rights of silence and counsel.

As the district court discussed in its opinion, the Fifth Amendment violation in *Smith* has since been limited to situations where the criminal defendant neither initi-

ates a psychiatric examination nor introduces psychiatric evidence. In *Buchanan v. Kentucky*, 483 U.S. 402, 422–23, 107 S.Ct. 2906, 2917–18, 97 L.Ed.2d 336 (1987), the Court stated that "if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." Although Rivera did not request the examination, he raised an insanity defense and presented psychiatric evidence at trial. We thus believe that there was no Fifth Amendment violation, especially in light of the fact that Drs. Holbrook and Grigson testified only to Rivera's mental state and did not describe any statements made by him concerning the crime. *See Granviel v. Lynaugh*, 881 F.2d 185, 190 (5th Cir.), *cert. denied*, ––– U.S. –––, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990).

The waiver discussions in *Smith* and *Buchanan* relate only to the Fifth Amendment's right against self-incrimination. "While it may be unfair to the State to permit a defendant to use psychiatric testimony without allowing the State a means to rebut that testimony, it certainly is not unfair to require the State to provide counsel with notice before examining the defendant concerning future dangerousness." *Powell v. Texas*, 492 U.S. 680, 109 S.Ct. 3146, 3149, 106 L.Ed.2d 551 (1989). At the time of the examinations at issue, Rivera had been indicted, and Cohen appointed as his attorney; Rivera's Sixth Amendment right of counsel had clearly attached. *See Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); and *Frisco v. Blackburn*, 782 F.2d 1353, 1355 (5th Cir.1986). Yet our review of the record of the state proceedings revealed no documents evidencing that Cohen was notified of either examination.

We believe, however, that any error was harmless because Drs. Holbrook and Grigson examined Rivera only to determine his sanity.[1] Once Rivera raised an insanity defense, the state had the right to require

---

1. In fact, Dr. Holbrook testified in *favor* of the defense at trial.

**662**

that Rivera be examined by a state psychiatrist outside the presence of his counsel. *See United States v. Cohen,* 530 F.2d 43, 447–48 (5th Cir.1976), *cited in Smith,* 451 U.S. at 465, 101 S.Ct. at 1874. The relevant consultation between Rivera and Cohen thus occurred at the time that Rivera decided to raise the defense. "[B]y pursuing [an insanity defense], an accused necessarily ha[s] already made the 'significant decision' regarding the psychiatric evaluation, and cannot now complain that he was denied the effective assistance of counsel prior to the examination because he was unable to consult with his attorney as to whether to submit to a psychiatric examination." *Vardas v. Estelle,* 715 F.2d 206 (5th Cir.1983). *See also United States v. Byers,* 740 F.2d 1104, 1118–19 (D.C.Cir. 1984).

Notably, *Smith, Powell,* and *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988), involved psychiatric testimony introduced during a capital sentencing proceeding on the issue of future dangerousness. In all three cases, the defendants could have chosen to refuse an examination on future dangerousness. In not notifying the defendants' counsel of the pending examinations, then, the state denied the defendants an opportunity to consult with their attorneys at a critical juncture.

We express no views on Rivera's state breach of confidentiality claim, as violations of state law are generally not cognizable on federal habeas review. *See Bridge v. Lynaugh,* 838 F.2d 770, 772 (5th Cir.1988).

The judgment of the district court is AFFIRMED.